Nathaniel D. Macumber v. The White River Log and Booming Company.

*Pleading—General expressions—Variance.*

1. A general expression superadded to specific words in the charging part of a declaration is construed as a term of the same class as the rest.

2. Damages as for positive malfeasance charged in the declaration cannot be recovered upon evidence of non-feasance only; and defendant is not required to meet such a showing.

Error to Newaygo.   (Fuller, J.)   Oct. 5.—Dec. 21.

CASE.   Defendant brings error.   Reversed.

*Norris & Uhl* for appellant.   Variance between allegata
and probata in actions for injury is fatal: *Fitzsimons v.
Inglis* 5 Taunt. 534 ;  *Shaw v. Boston & Worcester R. R.*
8 Gray 72 ;  *Penn. &c. Nav. Co. v. Dandridge* 8 Gill &
Johns. 248 : 29 Am. Dec. 549 ;  *Tucker v. Tarbell* 11 Allen
131;  *Stone v. Swift* 4 Pick 389 ;  *Detroit, Hillsdale & Ind.
R. R. Co. v. Forbes* 30 Mich. 165 : a plaintiff cannot recover on evidence of negligence not alleged in the declaration : *Flint & Pere Marquette R'y Co. v. Stark* 38 Mich.
715 ;  Cooley on Torts 660 : a declaration for negligent
injuries must aver the fact and manner of negligence ;  and
the plaintiff should be confined to what is set forth in his
declaration : *Marq. &c. R. R. v. Marcott* 41 Mich.  433 ;
*Batterson v. Chic. & G. T. Ry.* 49 Mich. 184.

*Albert G. Day* for appellee.   The sufficiency of the
declaration was not disputed in *White River Log &c. Co. v.
Nelson* 45 Mich. 578.

GRAVES, C. J.   The charge brought against the company,
and which the plaintiff called upon it to answer, was for
damming up the water by gates, booms, timbers, chains,
ropes, pins, poles, logs and other appliances, and thereby
flooding the plaintiff's land.   The circumstances of the
wrong were laid as being acts of a direct and positive nature,
and the instruments used were described in terms, with a
single exception, where a general expression was introduced.
But in that case the meaning would accord with the subject-
matter (Broom's Max. 575), and the construction would
follow the rule that words of specification draw into the
same class those general terms which are superadded to attain the end without further prolixity.   *American Trans-*

*portation Co. v. Moore* 5 Mich. 368; *Hawkins v. Great Western R. R. Co.* 17 Mich. 57; *McDade v. People* 29 Mich. 50; *Brooks v. Cook* 44 Mich. 617.

The case brought against the defendant was consequently one of malfeasance, and was so exactly marked out by the facts set forth as to leave no room for speculation in regard to its legal identity. It seems, however, that no evidence was put in to convict defendant of the form of injury thus alleged. The charge so informs us. Still, the jury were allowed to return damages on the supposition of some remissness of defendant in its management of drives; or, in other words, the court considered it competent for the plaintiff, under a complaint for malfeasance, to recover upon a supposed non-feasance. We are not able to assent. *Funk v. Arnold* 3 Yeates 428; *Breedlove v. Turner* 9 Mart. (La.) 353; *Dunlop v. Munroe* 7 Cranch 242; *Doane v. Badger* 12 Mass. 65, 69; *Mayor v. Humphries* 1 C. & P. 251; *Hullman v. Bennett* 5 Esp. 226; *Fitzsimons v. Inglis* 5 Taunt. 534; *Parker v. Rensselaer & Saratoga R. R. Co.* 16 Barb. 315; *Hill v. Supervisor &c.* 10 Ohio St. 621; *Simonds v. Pollard* 53 Vt. 343 (1881); 1 Chit. Pl. 140, 141, 147, 402.

CAMPBELL and COOLEY, JJ. concurred.

COOLEY, J. In this case the boom company is sued for damming and obstructing a river by logs, booms &c., and thereby setting back the water and causing it to overflow the plaintiff's land. On the trial the circuit judge submitted the case to the jury on the theory that there was no evidence in the case showing that the company had done any act to obstruct the river as charged, but told them, in substance, that they might find the company responsible for a failure to perform with diligence its duty to float the logs cast into the river by others, and to run them in a proper manner so as to prevent injury to the plaintiff's land by backwater. On this instruction the plaintiff recovered upon a case not made by his declaration, and which defendant had not been called upon by the pleadings to meet.

If we could judge of the case by this record, we should believe the plaintiff has strong equities; but when the plaintiff recovers upon a case that he has not summoned the defendant to meet, we cannot know that the defendant has in fact attempted to meet it. But whether he has or not, it is certain he was not required by law to do so.

The judgment must be reversed with costs and a new trial ordered.

Graves, C. J. and Campbell, J. concurred.

Sherwood, J. dissenting. The action in this case is for the recovery of damages caused by the defendant's obstructing the free passage of the waters in White river, thereby causing a rise therein, and overflowing the plaintiff's land, and preventing his clearing, improving and cropping the land during each of the years from 1876 to 1881, both inclusive. The declaration contains six counts, all precisely alike, except that the damage claimed in each is for a different year from that in the others. Plea, general issue. The cause was tried by jury, and the plaintiff had a verdict for $400. Defendant brings error. The bill of exceptions contains the substance of all the evidence.

It is conceded that the plaintiff was the owner of the lands overflowed, and that White river passes through the same; and that the defendant is a corporation and did business upon the White river during each of said years; and the testimony shows that the defendant controlled the movement of all logs upon the river. White river is also shown to be a navigable stream for the floatage of logs, and there seems to be no controversy but that the defendant drove and controlled all the logs which came into the river during each of the years in which the plaintiff claimed damages. It appears that White river since 1860 has been largely used for the purpose of driving logs, and in so doing from 1873 to 1882 its waters passing through the land of the plaintiff were controlled by the defendant, and that the company so dealt with the logs in the stream by its acts and omissions that jams occurred very frequently opposite to and below

the premises of the plaintiff, and thereby the water of the river was raised to such an extent as to cause serious injury to the lands of the plaintiff and to his crops growing thereon.

None will claim, I apprehend, that an individual could so fill White river with logs, or in any other manner obstruct the natural flow of the stream, to the injury of the lands of the plaintiff, without becoming liable for the damage caused thereby. Neither could the defendant so control said stream, either by acts of omission or commission, as to produce a like result, without subjecting itself to such liability.

The rights of the plaintiff, if violated at all, the testimony tends to show were made the subject of frequent invasions, and each time from the same cause, through a period of five or six years; and I fail to find in the testimony that any effort was made on the part of the defendant to prevent a repetition of the injury in any year succeeding the first. The record, as I recollect it, shows beyond controversy that previous to the time defendant assumed control of the floating business upon the river, the plaintiff's lands were not subject to such overflow, although a large logging business was then done on the stream. If the use of the river by the defendant company to the extent it did, rendered it necessary to overflow and destroy the valuable farming and timber lands of the plaintiff, as the testimony tends to show, it was not only the right and privilege of the defendant, but it was the company's duty, to either lease or buy the plaintiff's premises, or in some manner make suitable recompense to the plaintiff for the injury done to his lands. The statute creating this company not only authorizes but contemplates that this shall be done in such cases.

It is true our rivers are great public thoroughfares, subject alike to be used for the benefit of the public and all classes of persons, both natural and artificial, but neither can make use of them to the prejudice or destruction of private interests or rights without first making just compensation therefor.

In this case it was the duty of the company to drive the logs it had in charge down the river with care, and without

any unnecessary injury to the adjacent lands, or the timber or crops thereon, or other damage to the owners thereof; and for that purpose to furnish all necessary appliances and a sufficient number of men. I fully agree with Chief Justice Graves in his statement of the duty of the company when he says "it was the duty of the company to see that its connection with the logs did not result in causing any more flowage of the plaintiff's land than would occur by the passage of the logs in a purely natural way. It had no right to deal with them in any mode whereby jams would be formed or enlarged so as to cause the water to overflow the plaintiff's land when it otherwise would not; or cause it to overflow there more than it would were the logs left to themselves; and if jams were formed or enlarged in that way to such extent that they did cause the water to flow the plaintiff's land, the company is liable for all that flowage beyond what the flowage would have been, if any, had the logs been allowed to float down naturally and without artificial interference." *White River Log & Booming Co. v. Nelson* 45 Mich. 578. It pretty clearly appears from the record that the plaintiff received quite extensive injury to his property from the lumbering operations carried on upon the river during the several years mentioned in the declaration under the management and control of the defendant, and it would seem that the judgment rendered affords but a slight compensation for the damage sustained, and unless the case presents insurmountable legal objections the judgment should not be disturbed.

The most difficult question presented is upon the insufficiency of the declaration to cover the case presented by the proofs. While its general insufficiency must be conceded as applied to most cases, still I think, in view of the rights conferred, and the peculiar duties assumed by the defendant upon White river in making use of its waters for running logs, the defendant may be held liable for the injury stated in the testimony under the several counts contained in this declaration. It cannot, however, be regarded as a precedent in this class of cases. It is true, it contains no allegations

of duty, but of its duty the defendant could not fail to be cognizant. Not only the law giving the defendant an existence, but the Constitution of our State, both disclose and enjoin that duty, and it is hardly necessary to aver a duty thus imposed upon the defendant by general statute and the organic law, and which is contained in the license under which alone the defendant may do business at all.

The overflowing was clearly caused by the piling up of the logs at certain points of the river, near or below the plaintiff's lands. With a sufficient force of men this could have been mostly prevented by the defendant. And whether the obstruction of the waters was done by allowing the accumulation of the logs by the natural current of the stream, or by the efforts and labor of defendant's servants, can make but little difference so long as the overflow was under the control of the defendant. The error, if any, upon this point could not have been prejudicial, as it would have been cured by a simple amendment of the declaration, which might have been allowed at the close of the testimony by the changing of a very few words. The case was tried on the plaintiff's theory, and full defense was made by defendant; it has lost nothing in the form of the action. This decision of the question made upon the declaration disposes of a large number of defendant's exceptions.

There are in this case forty-nine assignments of error. It is unnecessary to consider them in detail. Assignments from 3 to 28, both inclusive, relate to the injury to the plaintiff's premises and the extent of his damages. The objections were made to the admission of testimony under what was supposed by counsel to be an insufficient declaration, and probably would not otherwise have been taken. It appears from the testimony that the lands overflowed were bottom lands, partly cleared and partly in process of clearing, and, when cleared, capable of growing any crop usually raised by farmers in that vicinity. Testimony was given tending to show the amount of crops of various kinds the land was capable of growing when cleared, and the value during the period for which damages were claimed, for the purpose of

showing the extent of plaintiff's injury. The witnesses appeared to be all competent to speak upon the subject, and their testimony was competent as furnishing some data to the jury upon which they might estimate the plaintiff's damages. It was also in evidence that it was the intention of plaintiff to complete the clearing of this land; that he was actually engaged in doing so ; and that his work was arrested by the overflow. No error is discovered in these rulings which could prejudice the defendant.

There is no error in the questions put to witness Walters, contained in the first and second assignments of error. They relate to the survey of the lands claimed to have been injured, and to the map of the premises as made by him and its correctness.

We have carefully examined the charge of the court in this case, and think it fully covers all the questions raised in the remaining assignments of error relating to the rulings of the court on the requests presented, and to those portions of the charge excepted to. The charge is fair, and upon these questions it states the law correctly. It is quite as favorable to the defendant as he could have reasonably expected under the testimony. The same, I think, may be truly said of the judgment.

The circuit judge, in his charge to the jury, expressly told them that the defendant would not be liable for the necessary injury to the lands of the plaintiff in properly driving the logs down the river, or for such injury as might arise from freshets ; and that defendant was not an insurer of plaintiff's property against damage necessarily occurring in driving the logs properly. And while, as the circuit judge says, there is no *positive* testimony of acts of defendant in piling up the logs in the river, or in causing them to accumulate in the stream to such an extent as to occasion an overflow of the plaintiff's land, still there is testimony in the case *tending to show* that such was the fact, and that the result was occasioned by the wrongful conduct of the defendant, and I think the case was properly submitted to the jury.

The judgment should be affirmed with costs.