Vermont Superior Court
Filed 12/03/24
Bennington Unit

VERMONT SUPERIOR COURT
Bennington Unit
207 South St
Bennington VT 05201
802-447-2700
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-04512

| Todd Ramos v. Thomas Shea |
| --- |

## ENTRY REGARDING MOTION

Title:      Motion for Summary Judgment (Motion: 2)
Filer:      Alexander M. Dean
Filed Date: October 09, 2024

This case involves a dispute between Plaintiff Todd Ramos (Ramos) and Defendant Thomas Shea (Shea) over a claim for intentional infliction of emotional distress (IIED). Shea filed a Motion for Summary Judgment and Statement of Undisputed Facts on October 9, 2024, arguing that the IIED claim should be dismissed because Ramos does not have an expert witness able to testify on the element of causation. On November 12, 2024, Ramos filed an Opposition to Defendant's Motion for Summary Judgment and a Statement of Disputed Facts.

The ruling on the motion, for the reasons herein, is:

1. Defendant's Motion for Summary Judgment is denied.

### Facts

The following facts are accepted as true. On October 29, 2020, Ramos pulled his car to the side of the road in Searsburg, Vermont, on the property owned and occupied by Shea. The parties had no prior dealings or relationship before the incident. At some point, Shea fired a handgun twice in the presence of Ramos while Ramos was seated in his vehicle. Ramos claims that he suffered severe emotional distress from this incident.

Trial is currently scheduled for March 20 and 21, 2025. Ramos has not disclosed any expert witness as part of his discovery responses and does not intend on presenting expert testimony to establish causation for his IIED claim.

### Discussion

**Summary Judgment is denied because expert testimony is not required to prove causation on an IIED claim in Vermont.**

Shea moves for summary judgment on the IIED claim, arguing that expert testimony is required to prove the element of causation on an IIED claim. Ramos maintains that no expert testimony is necessary to establish that one should be liable for IIED when they shoot at or in the

presence of another person.  Shea also claims that the IIED claim should be denied because, based on the medical records submitted by Ramos, his emotional distress started before the incident, so no reasonable jury could conclude that his shooting in Ramos's direction caused him emotional distress.

A motion for summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a).  Allegations of the nonmoving party, if supported by admissible evidence, are regarded as true when determining if a genuine issue of material fact exists. *Morisseau v. Hannaford Bros.*, 2016 VT 17, ¶ 12, 201 Vt. 313.  The benefit of reasonable doubts and inferences goes to the nonmoving party.  *Id.*  The procedures of Rule 56 should be construed liberally in favor of resolving disputes on their merits.  *Stone v. Town of Irasburg*, 2014 VT 43, ¶ 57, 196 Vt. 356.  A moving party has the burden of proving there are no disputed issues of material fact that exist.  *Fitzgerald v. Congleton*, 155 Vt. 283, 294 (1990).

Vermont recognized the tort of IIED as described in § 46 of the Restatement (Second) of Torts in *Sheltra v. Smith*, 136 Vt. 472, 475 (1978).  To avoid summary judgment on a claim for IIED, Ramos must show that Shea "engaged in outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct." *Cate v. City of Burlington*, 2013 VT 64, ¶ 28, 194 Vt. 265 (citing *Fromson v. State*, 2004 VT 29, ¶ 14, 176 Vt. 395).

The Restatement (Second) of Torts does not contain a requirement that expert medical testimony is necessary for a plaintiff to succeed on an IIED claim.  Section 46 cmt. j. provides:

> The rule stated in this Section applies only where the emotional distress has in fact resulted, and where it is severe.  Emotional distress passes under various names, such as mental suffering, mental anguish, mental or nervous shock, or the like.  It includes all highly unpleasant mental reactions, such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry, and nausea.  It is only where it is extreme that the liability arises.  Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people.  The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.  The intensity and the duration of the distress are factors to be considered in determining its severity.  Severe distress must be proved; but in many cases the extreme and outrageous character of the defendant's conduct is in itself important evidence that the distress has existed. …

> The distress must be reasonable and justified under the circumstances, and there is no liability where the plaintiff has suffered exaggerated and unreasonable emotional distress, unless it results from a peculiar susceptibility to such distress of which the actor has knowledge. …

It is for the court to determine whether on the evidence severe emotional distress can be found; it is for the jury to determine whether, on the evidence, it has in fact existed.

The Restatement (Second) of Torts states that the court determines if severe emotional distress can be found, and the jury determines whether the evidence exists. Defendant points out that some states, including Pennsylvania, have adopted a hard rule that a plaintiff must provide expert medical testimony to demonstrate severe emotional distress in an IIED. See *Kazatsky v. King David Memorial Park, Inc.*, 527 A.2d 988, 995 (Pa. 1987) (reasoning that, given the advanced state of medical science, it is "unwise and unnecessary to permit recovery to be predicated on an inference based on the defendant's 'outrageousness' without expert medical confirmation that the plaintiff actually suffered the claimed distress."). However, Vermont has adopted the Restatement approach and has never endorsed this bright line rule. Additionally, Shea has not provided any Vermont caselaw requiring the plaintiff to produce expert medical testimony to succeed on an IIED claim. Because the Supreme Court of Vermont has never adopted this rule, but rather has adopted the Restatement (Second) of Torts approach, this Court concludes that Ramos does not, as a general matter, need to provide expert medical testimony to succeed on his IIED claim.

Moreover, to the extent that Pennsylvania and several other states have adopted a bright line rule that expert medical testimony is required to provide expert medical testimony to succeed on an IIED claim, this is the minority approach across U.S. jurisdictions. See generally *Miller v. Willbanks*, 8 S.W.3d 607 (Tenn. 1999) (adopting majority position that plaintiffs ordinarily are not required to support claims of serious mental injury with expert proof); see also 4 Modern Tort Law: Liability and Litigation § 31:10 (2d ed.). To the extent that Shea argues that this Court should adopt the minority rule, when a court is called upon to rule in a matter of first impression, generally summary judgment should be denied because a more complete factual showing is necessary for the court to conduct a full analysis. See 10A Wright & Miller, Federal Practice & Procedure: Civil § 2725 (4th ed.); see also *White Motor Co. v. U.S.*, 372 U.S. 253, 264–65 (1963), overruled on other grounds by 547 U.S. 28 (2006) (reasoning that summary judgment was improper because it was the first case involving a territorial restriction in a vertical arrangement and appellant should have been allowed to introduce evidence at a full trial).

Lastly, Shea avers that Ramos's IIED claim should be denied because his medical records do not support that he suffered any new emotional distress that he already had before the incident. This is an issue of damages and credibility that should be determined by a jury at trial. Moreover, it is for this Court to determine whether on the evidence severe emotional distress can be found and the jury to determines whether, on the evidence, it has in fact existed. Should this Court conclude that a reasonable jury could find that Ramos suffered severe emotional distress, the jury may determine the damages owed, if any. Thus, the fact that the medical records show that Ramos suffered from emotional distress before the incident is not fatal to Ramos's claim.

This Court concludes that Ramos's IIED claim survives the Motion for Summary Judgment without expert medical testimony. Accordingly, the Motion for Summary Judgment is denied.

# ORDER

The Court denies Shea's Motion for Summary Judgment because he has not shown that he is entitled to summary judgment as a matter of law.

The motion is DENIED.

**Signed Electronically on December 2, 2024 pursuant to V.R.E.F. 9(d).**

**David Barra**
**Superior Court Judge**